412 So.2d 1337 (1982)
STATE of Louisiana
v.
Irvin WINN.
No. 81-KA-2140.
Supreme Court of Louisiana.
April 5, 1982.
Rehearing Denied May 14, 1982.
*1340 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Robert W. Gillespie, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Jeanette G. Garrett, and Donald R. Minor, of Indigent Defender Office, Shreveport, for defendant-appellant.
FRED S. BOWES, Justice Pro Tem.[*]
The defendant, Irwin Winn, was convicted of three counts of armed robbery in violation of R.S. 14:64, one count of aggravated kidnapping in violation of R.S. 14:44, two counts of aggravated rape in violation of R.S. 14:42, and two counts of aggravated crime against nature in violation of R.S. 14:89.1. After a trial by jury, he was sentenced to twenty-five years at hard labor without benefit of parole, probation, or suspension of sentence on each count of armed robbery, the sentences to run concurrently; life imprisonment at hard labor for aggravated kidnapping; ten years at hard labor for each count of aggravated crime against nature, the sentences to run concurrently; and life imprisonment at hard labor for each count of aggravated rape, the sentences to run concurrently. The trial court ordered the twenty-five year sentences for armed robbery to run consecutively with the life sentence for aggravated kidnapping and the life sentences for aggravated rape. On appeal, the defendant urges twelve assignments of error.
On April 26, 1980, at approximately 9:00 p. m., a man with a towel over his face, armed with a shotgun, went into Ward's Chapel in Shreveport, Louisiana, and ordered everyone in the church to get down on the floor. He then stated that one of the ladies was to get up and get the wallets from the men. Thinking he was talking to her, Patricia Reliford did as he directed. When Ms. Reliford gave the wallets to the man, he grabbed her by the arm and took her outside, where he lead her into some woods across the street from the church. After taking Ms. Reliford deeper into the woods, he tied her hands behind her back with a necktie and removed her undergarments. On two separate occasions, in different parts of the woods, the man raped her and forced her to engage in oral sex. Ms. Reliford tried to resist her assailant but he held a gun to her head while he raped her. Eventually, the victim escaped to a nearby road and summoned help. Subsequently, Ms. Reliford, the pastor of the Chapel, and several witnesses, identified the man as the defendant, Irvin Winn.
Assignment of Error Number 1
By this assignment, defendant contends that the trial court erred in denying his motion to suppress the identification evidence. It is the defendant's contention that the identification should have been suppressed because it was the result of suggestive identification procedures. He also argues that there was no independent basis for an in-court identification of him. With regard to the suggestiveness of the identification procedure, defendant maintains that Ms. Reliford was shown pictures of him twice, which implanted his features in her mind and tainted the identification of him.
*1341 At the motion to suppress, Ms. Reliford stated that on one occasion, she was shown a photographic lineup prior to viewing the physical lineup. She testified that she looked at eight pictures for about five minutes. Ms. Reliford claimed, however, that she was unable to identify her assailant from the pictures. When asked whether the defendant Winn was in that group of pictures, Ms. Reliford answered, "I didn't remember. If he was in there, I didn't know it."
Defendant also argued at the motion to suppress that Ms. Reliford's identification of him was further tainted because she "had the opportunity" to see him prior to the physical lineup. Before the lineup, defendant was sitting in a room in the police station while Ms. Reliford was waiting in the next room. Although the door between the two rooms was open, the defendant could not testify that Ms. Reliford actually saw him. He merely asserted that she had the opportunity to do so.
With regard to the identification of the defendant in the physical lineup, Ms. Reliford maintained that she based her identification on the physical appearance and characteristics of the defendant, i.e., size, height, weight and voice. Each of the six men in the lineup were made to step forward and say: "Come on and be quiet."[1] Although, at one point in her testimony, Ms. Reliford stated that she recognized the defendant by his voice, she later said that she recognized him before he said anything.
The evidence does not indicate that the identification procedures were unduly suggestive. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 S.Ct. 140 (1977). If the photograph of the defendant was actually shown to Ms. Reliford prior to the lineup, she didn't remember it. She stated that she did not recognize the defendant in the photographic lineup. Even if she did see the defendant's photograph, this fact did not have any bearing on what happened later, in light of her perception at the time of the photographic lineup. There was also no evidence to show that Ms. Reliford saw the defendant in the next room in the Detective Division. These facts formed the basis of the trial judge's decision to deny the motion to suppress and we agree.
Even assuming that the identification procedures were suggestive, there was a sufficient independent basis for the in-court identification. Ms. Reliford stated that she was in the woods with the defendant "for a long time." She was able to observe the lower part of his face, i.e., the lips and chin area. When he had a mask on, she was able to observe his eyes. At trial, Ms. Reliford maintained that she had recognized the defendant at the lineup by his voice, his beard, and his physique. It is well established that even if a pre-trial identification of an accused was the product of impermissible suggestion, the in-court identification is, nevertheless, admissible if it has an independent basis. State v. Stewart, 389 So.2d 1321 (La.1980); State v. Rudolph, 332 So.2d 806 (La.1976), and cases cited therein.
For these reasons, this assignment is without merit.
Assignment of Error Number 2
By this assignment, defendant contends that the trial court erred in denying his motion to suppress physical evidence. The evidence seized inside the house included some shoes and socks, and eighteen dollars from a nightstand in the defendant's room. None of these were introduced into evidence at trial. A hat belonging to Winn, and a wallet taken in the armed robbery, were found beneath a barn on the property where the defendant lived. A photograph of the hat with the wallet inside, along with the wallet itself, was introduced at trial.
During the late evening hours of April 26, 1980, or the early morning hours of April 27, 1980, the defendant was arrested and taken to the police station. Later that morning, after the crime was committed, *1342 the police went back to the defendant's residence. Winn had lived with Roland Franklin, the owner of the house, since he was two years old. After arriving at the house, the police obtained Franklin's consent to search. Defendant argues that Franklin's consent was not freely given, and that Franklin did not have the right to consent to a search of the defendant's bedroom.
It is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Bourgeois, 388 So.2d 359, 362 (La.1980). However, when the State seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, freely and voluntarily given.
It is clear from the hearing on the motion to suppress that Franklin's consent was freely and voluntarily given. He stated that he realized he did not have to let the officers search the house or yard but that he wanted them to do so. Clearly, Franklin had the right to consent to a search of his house and grounds. Whether he had the right to consent to the search of the defendant's room is an issue that does not have to be addressed, as none of the items seized from the defendant's room were offered into evidence. Since the hat and wallet were seized under Franklin's barn, pursuant to Franklin's consent to search his property, the trial judge was correct in denying the motion to suppress.
This assignment has no merit.
Assignment of Error Number 3
By this assignment, defendant argues the trial court erred in denying his motion to quash, alleging prejudicial joinder. The defendant was charged by a single indictment with eight separate offenses; armed robbery (3 counts); aggravated kidnapping (1 count); aggravated rape (2 counts); aggravated crime against nature (2 counts). He contends that the joinder of these crimes was prejudicial, in that it was too difficult for the jury to segregate each offense and to consider the evidence in determining whether all the elements of all the offenses had been proven beyond a reasonable doubt. The defendant further states that considering the heinous and sexual nature of some of the charges there was a great likelihood that any jury would be hostile to a person on trial for eight counts of this nature.
C.Cr.P. Art. 493 provides for joinder of offenses:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
The offenses in question certainly seem to meet the "same act or transaction" requirement of Art. 493. Clearly, the evidence produced at the motion to quash and at the trial itself indicated that these crimes were a continuous transaction, from start to finish, involving the victim and the defendant. It can also be stated that the jury was able to segregate each offense and consider the evidence in determining whether each element of the offenses was proven beyond a reasonable doubt. The jury was polled as to each count and gave its verdict as to each count.
Defendant also alleges that he was prejudiced by the joinder of these offenses and that they should have been severed. La.C. Cr.P. Art. 495.1 provides for severance of offenses:
If it appears that a defendant or the State is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
*1343 In State v. Washington, 386 So.2d 1368 (La.1980), this Court discussed the various factors to be considered by a lower court in applying Art. 495.1:
"... the trial court must weigh the possibility of prejudice versus the important considerations of judicial economy and administration. In determining whether prejudice may result from the joinder, the court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. See Drew v. United States, 331 F.2d 85 (D.C.Cir.1964); United States v. Weber, 437 F.2d 327 (3rd Cir. 1970)."
This Court held in State v. Webb, 364 So.2d 984 (La.1978), that charges of aggravated kidnapping, armed robbery, and attempted aggravated rape, arising out of the same crime spree, were properly joined. In this case, there are no facts to indicate that the jury was hostile to the defendant or overwhelmed by the charges against him. We, therefore, find that the offenses were not improperly joined.
For these reasons, this assignment lacks merit.
Assignment of Error Number 4
By this assignment, defendant contends that the trial court erred in denying his requests for supplemental discovery.
The defendant made two requests for supplemental discovery. In the first request, he asked that any and all statements made by Patricia Reliford be made available to him. The second request sought production of all police reports made in connection with this case. Defendant argued that these items should have been made available to him to examine for exculpatory evidence. He alleges that there was conflicting testimony at the motion to suppress concerning whether the defendant's picture or a photographic lineup was shown to the victim before the live lineup.
Defense Counsel refers this Court to its decision in State v. Sylvester, 388 So.2d 1155 (La.1980). There we applied a "reasonable doubt that did not otherwise exist" standard, in deciding whether a request for production of a statement should have been granted.
As set forth in Assignment of Error Number 1, supra, Ms. Reliford herself testified at the motion to suppress that she was shown a photographic lineup before she viewed a physical lineup. The requested documents were examined "in camera" and were found by the trial judge to contain no exculpatory evidence, except that in her statement Ms. Reliford indicated that she had not seen the defendant's face very clearly. Ms. Reliford also testified at trial that she had not seen the defendant's face clearly, and that she had viewed a photographic lineup prior to identifying the defendant in a physical lineup. From these facts, it is clear that the production of police reports and a prior statement by the victim revealing the same facts would not have created a "reasonable doubt that did not otherwise exist." State v. Sylvester, supra.
This assignment is without merit.
Assignment of Error Number 5
By this assignment, defendant asserts that the trial court erred in denying a defense challenge for cause against prospective juror, Miriam Ellzie.
La.C.Cr.P.Art. 797, pertaining to challenges for cause, provides in pertinent part:
The State or the defendant may challenge a juror for cause on the ground that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

*1344 (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict.
Defendant submits that Ms. Ellzie's recent and lengthy employment with the Caddo Parish Clerk of Court's office made it reasonable to conclude that she was not impartial. Art. 797(2). He also argues that her relationship with the District Attorney's office and the prosecutor was such that it was reasonable to conclude that it would have influenced her in reaching a verdict. Art. 797(3). Ms. Ellzie's job duties were related to the criminal justice system in that she prepared all the criminal appeals from Caddo Parish for review by this court. By virtue of her employment, she knew the assistant district attorney prosecuting the case and also stated that she had handled many appeals in cases that were prosecuted by him.
Defense counsel correctly points out that service on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause. State v. Lewis, 391 So.2d 1156 (La.1980). However, that is not the case here. One who has previously worked in a Clerk of Court's office would not be classified as "one associated with law enforcement duties." The cases defendant relies on all deal with prospective, former, or current employees of the police department or District Attorney's office. See, State v. Lewis, supra; State v. Simmons, 390 So.2d 1317 (La.1980); State v. McIntyre, 365 So.2d 1348 (La.1979). Ms. Ellzie was merely an employee of the Clerk of Court's office, performing administrative, and not law enforcement, duties.
A trial judge is vested with large discretion in ruling on a challenge for cause. His ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Lewis, supra. Ms. Ellzie testified on voir dire that her acquaintance with the district attorney and the prosecutor on a professional level would in no way affect her deliberation on the facts in the case. In light of this testimony by Ms. Ellzie and the above-discussed standard in State v. Lewis, supra, we do not find that the trial judge abused his discretion in denying the defendant's challenge for cause.
For these reasons, this assignment is without merit.
Assignment of Error Number 6
By this assignment, defendant argues that the trial court erred in allowing the prosecution to exercise a peremptory challenge before the defense had the opportunity to conduct voir dire examination of the prospective juror. He contends he was denied his constitutional right to conduct a full voir dire examination of prospective jurors under La.Const.Art. 1, Sec. 17. Defendant cites State v. Claiborne, 397 So.2d 486 (La.1981) in support of this proposition.
In State v. Claiborne, supra, the defendant's conviction was reversed because the State was allowed to challenge a juror for cause before the defendant was given an opportunity to examine the prospective juror. Claiborne is not applicable here, however, since the State used one of its peremptory challenges to exclude the juror in question. Under La.C.Cr.P. Art. 795, a peremptory challenge may be made by the State at any time before the juror is accepted to serve on the jury panel.
It is true that allowing the State to exercise a peremptory challenge before the defense has had a chance to examine the prospective juror is not in strict compliance with the codal provisions governing the selection of jurors. La.C.Cr.P.Art. 786 provides that the Court, the State, and the defendant, shall have the right to examine prospective jurors. Under La.C.Cr.P. 788, after the examination provided for in Art. 786 is conducted, a prospective juror is then tendered first to the State for acceptance or rejection, then to the defendant. However, the defendant was in no way prejudiced by the trial court allowing the peremptory challenge to be exercised. La.C.Cr.P. Art. *1345 921. In State v. Nix, 327 So.2d 301, 327 (La.1976), this Court held that a defendant has no standing to complain of the manner in which the State exercises its peremptory challenges.
Additionally, defendant did not object at the time the State exercised its peremptory challenge. Therefore, he is barred from asserting this issue on appeal. State v. McDermitt, 406 So.2d 195 (La.1981), La.C. Cr.P.Art. 841.
Therefore, this assignment is without merit.
Assignment of Error Number 7
By this assignment, defendant maintains that the trial court erred in allowing a State witness to make an in-court identification of him.
Margaret Williams was the first witness to testify for the State. She was present in the church when the intruder entered. Although Ms. Williams did not view any type of lineup at the police station after the crimes were committed, she did view pictures of the lineup in the district attorney's office on the morning of the trial.
During the trial, the judge sustained the defense's objection to the prosecutor's attempt to have Ms. Williams look at the pictures taken at the lineup and try to identify the defendant. However, he allowed Ms. Williams to make an in-court identification of the defendant over defense counsel's objection. The trial judge stated that he was overruling the objection because of prior testimony from the witness with regard to the conditions.
Ms. Williams did not positively identify the defendant at trial. When asked if, based on her observations in the church that night, she could identify anyone in the courtroom as the perpetrator of the crime, she replied, referring to the defendant, "that looks like his body-build right there."
The witness had the opportunity to observe the defendant in a well-lighted church. The armed intruder had commanded her attention for several minutes. She was able to describe his clothing, his mask, and the type of gun he was carrying. In our opinion, the totality of the circumstances indicate that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
This assignment is without merit.
Assignment of Error Number 8
By this assignment of error, defendant contends that the trial court erred in permitting corroboration of a key witness' testimony before she testified.
The State's key witness in this trial, Ms. Patricia Reliford, was the seventeenth witness to testify. Reverend Leroy Ward, called as the State's seventh witness, was not present in the church when the intruder entered. He gave the police Irvin Winn's name as a suspect when he learned that the man wore dark clothing and a hat. On the night the offenses occurred, or early the next morning, Reverend Ward was in the police station where he saw the defendant.
At the trial, during redirect examination, the prosecutor asked Reverend Ward whether, while he was at the police station, he, himself, or anyone else, influenced Ms. Reliford in choosing somebody in a lineup. Over the objection of defense counsel, Reverend Ward was allowed to answer this question. He responded, "No."
Defendant relies on R.S. 15:484 in asserting that the trial court erred in allowing the prosecutor to question Ward about the lineup proceedings involving Ms. Reliford.
La.R.S. 15:484 provides:
Before a witness has been sworn he can be neither corroborated nor impeached, nor is testimony to establish the credibility of a witness admissible until that credibility has been attacked.
As stated by this Court in State v. Batiste, 363 So.2d 639 (La.1978), one of the reasons underlying this rule of evidence is that:
"... courts have recognized that an attempt to establish the credibility of a witness before that credibility has been assailed carries the inherent prejudicial danger of bolstering, in advance, a witness' testimony and increasing its probative *1346 strength with the jury." 363 So.2d at 640.
In Batiste, this Court found prejudicial error had occurred where a U. S. Attorney testified that all charges except one had been dismissed against a certain witness in exchange for his testifying "completely and truthfully," where that witness had not yet testified.
In this case, Reverend Ward was not testifying to the "truth" of Ms. Reliford's future testimony. He was merely relating what he observed at the police station and what he did or did not say to her. Although his response did indirectly corroborate Ms. Reliford's later testimony that she was not told who she should choose from the physical lineup, it is our opinion that Reverend Ward's testimony was not the type intended to be excluded under R.S. 15:484.
This assignment has no merit.
Assignment of Error Number 9
By this assignment, defendant urges that the trial court erred in refusing to permit introduction of preliminary hearing transcripts for impeachment purposes. The defense attempted to introduce Detective Gary Foster's testimony at the preliminary hearing to impeach Patricia Reliford's identification testimony at trial. The Court refused to admit this testimony because there was no showing that Detective Foster was unavailable to testify.
La.C.Cr.P. Art. 295 provides in pertinent part:
The transcript of the testimony of any other witness who testified at the preliminary examination is admissible for any purpose in any subsequent proceeding in the case, on behalf of either party, if the court finds that the witness is dead, too ill to testify, absent from the state, or cannot be found, and that the absence of the witness was not procured by the party offering the testimony.
At the time of trial, Detective Foster was no longer with the Shreveport Police Department. Although the State subpoenaed Foster, it did not call him at trial. It did indicate, however, that Foster could be available within two hours if the defense wished to call him to testify. At no time did the defense ask that the witness be called to appear in person.
This court has held in State v. Kaufman, 304 So.2d 300 (La.1974), that a showing of unavailability must be made before a witness' former testimony can be admitted. However, since Detective Foster's preliminary hearing testimony was not being offered to prove the truth of the matter asserted, but only to establish that a prior inconsistent statement was made, the trial judge erred in excluding the evidence. State v. Hennigan, 404 So.2d 222 (La.1981); State v. Bazile, 386 So.2d 349 (La.1980).
It is not clear, however, why defense counsel believed Detective Foster's preliminary hearing testimony would have helped defendant. In no way does it contradict Ms. Reliford's version of her ability to recognize the defendant. During cross-examination at the preliminary hearing, Detective Foster testified that Patricia Reliford stated that she recognized the defendant by his voice and description, i.e., height and weight. When defense counsel cross-examined Ms. Reliford at trial, she denied saying that she recognized the defendant by voice alone. A review of the trial and preliminary examination testimony reveals that there were no prior inconsistent statements made by Ms. Reliford concerning her identification of the defendant. In fact, Detective Foster's prior testimony served to reinforce Ms. Reliford's story.
Although the preliminary hearing testimony of Detective Foster should have been admitted, there is no evidence that the trial court's ruling in any way prejudiced the defendant. We, therefore, find that the trial court's ruling in refusing to permit introduction of preliminary hearing transcripts did not constitute reversible error. La.C.Cr.P.Art. 921.
Accordingly, this assignment is without merit.
Assignment of Error Number 10
By this assignment, defendant maintains that the trial court erred in allowing *1347 the State, in its rebuttal argument, to present an argument concerning the Atlanta child murders. Defendant argues that the reference to the Atlanta child murders was a matter outside the record and, by its nature, clearly appealed to prejudice.
La.C.Cr.P. Art. 774 sets forth the permissible scope of closing argument:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
A review of the record indicates that during rebuttal argument the State analogized its failure to produce the towel and the stolen money in this case with the Atlanta police's failure to find the bodies of the young people in that case. The prosecutor was trying to make the point that all the evidence of a crime is not always found. In our opinion, the State was only "answering the argument" of defense counsel concerning the failure of the State to produce the rag and the stolen money. That is certainly permissible under Art. 774.
Even assuming that the prosecutor's comments did not fall within the permissible scope of Art. 774, their use would not have constituted reversible error. Before this Court will reverse a conviction on the basis of improper argument, it must be convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Heads, 370 So.2d 564 (La. 1979). In Heads, the prosecutor referred to the facts of the highly-publicized "Son of Sam" case. This Court found that the reference was made during a clearly permissible argument concerning the value and weight to be given to the character testimony presented by the defense, and did not constitute reversible error. La.C.Cr.P.Art. 921.
In this case, the prosecutor's reference to the Atlanta murders was made during a clearly permissible rebuttal to closing arguments raised by the defense that the State failed to produce the towel and the stolen money. We do not feel that these remarks contributed to the verdict.
Therefore, this assignment is without merit.
Assignment of Error Number 11
By this argument, defendant contends that the trial court erred in denying his motion for a new trial, which was based on insufficient evidence to support a verdict. Defendant submits that the evidence adduced at trial only supported convictions for the lesser offenses of simple robbery, forcible rape, simple kidnapping and crime against nature. He also maintains that the conviction should not be allowed to stand because of the contradictory testimony given by the State's key witness, Patricia Reliford, on the identification issue. In short, defendant urges that no rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty as charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
A review of the evidence presented at trial reveals that there was, indeed, sufficient evidence to convict the defendant of the greater offenses.
Defendant argues that the shotgun found by the police was unloaded and, hence, did not constitute a "dangerous weapon" under R.S. 14:64. However, an unloaded gun has been found to satisfy the "dangerous weapon" requirement for armed robbery. State v. Levi, 259 La. 591, 250 So.2d 751 (1971). Additionally, the presence of the gun prevented Ms. Reliford from resisting to the utmost the defendant's sexual attack upon her. There was testimony to the effect that the defendant would not kill Ms. Reliford as long as she cooperated with him. Since the defendant's implied threat was "accompanied by apparent power of execution", there was clearly sufficient evidence to convict him of aggravated rape. R.S. 14:42.
With regard to the aggravated kidnapping conviction, this Court has held that *1348 seizure of a person with intent to commit rape satisfies the requirement under R.S. 14:44 that the perpetrator has the intent to force the victim to give up anything of apparent present or prospective value. State v. Polk, 376 So.2d 151 (La.1979); State v. Sonnier, 379 So.2d 1336 (La.1979). We feel there was sufficient evidence to convict the defendant of aggravated kidnapping.
Finally, according to Ms. Reliford's testimony, she was forced to engage in oral-genital sex. This has been held to constitute a crime against nature. State v. Phillips, 365 So.2d 1304 (La.1978). Since Ms. Reliford was "prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution," there was sufficient evidence to find the defendant guilty of aggravated crime against nature. R.S. 14:89.1.
Defendant's additional argument that the identification evidence was so weak and contradictory that it cannot be deemed trustworthy is also unsupported by the record. Ms. Reliford's identification testimony given during direct and cross-examination at trial was not contradictory. It was essentially the same as the testimony that she gave at the preliminary hearing. (See Arguments I, IV, IX, supra)
Accordingly, this assignment is without merit.
Assignment of Error Number 12
By this assignment, defendant contends that the trial court erred in imposing an excessive sentence.
The trial judge imposed the following sentences on the defendant: 25 years at hard labor without benefit of parole, probation or suspension of sentence on each count of armed robbery, the sentences to run concurrently; life imprisonment at hard labor for aggravated kidnapping; 10 years at hard labor for each count of aggravated crime against nature, the sentences to run concurrently; life imprisonment at hard labor for each count of aggravated rape, the sentences to run concurrently. The trial court ordered the 25-year sentences for armed robbery to run consecutively with the life sentence for aggravated kidnapping and the life sentences for aggravated rape. Defendant submits that all of the sentences should have been ordered to run concurrently. Because consecutive sentences were imposed, he argues the sentence should be considered excessive.
Defendant refers this court to C.Cr.P.Art. 883 which provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
According to defendant, the wording of the statute indicates that it is preferable to impose concurrent terms of imprisonment for offenses constituting parts of a common plan or scheme. He relies on State v. Cox, 369 So.2d 118 (La.1979), where it was noted that concurrent rather than consecutive sentences are the usual rule under American theory and practice, at least for a defendant without a criminal record and in the absence of a showing that the public safety requires a longer sentence.
In his statements of reasons for sentencing, the trial judge noted that the defendant did have a prior criminal record. Winn had been convicted of carrying a prohibited weapon in Texas in 1972 and in Caddo Parish for the unauthorized use of a weapon in 1976. There was also a pending charge in Rapides Parish, which had been reduced to unauthorized use of a weapon and for which there was still an outstanding bench warrant. The judge apparently believed that the public safety required a longer sentence in this case. He stated that a lesser sentence would not be considered in *1349 view of the seriousness of the crime, and that correctional treatment and a custodial environment were absolutely necessary.
The trial judge took into consideration the mitigating, as well as the aggravating, circumstances involved. He mentioned the defendant's good work history and good school record, his lack of involvement with juvenile authorities, and his honorable discharge from the Air Force after attaining the rank of sergeant. The judge stated, however, that there was clearly an undue risk that the defendant would commit another similar crime.
From the record, it appears that the trial court adequately complied with the sentencing guidelines in C.Cr.P.Art. 894.1. The defendant was found guilty of not one but several vicious crimes for which the legislature has designated very long terms of imprisonment and we feel that the sentences imposed upon the defendant were not "so disproportionate to the crime committed as to shock the court's sense of justice." State v. Bonanno, 384 So.2d 355 (La. 1980). Therefore, the trial court did not abuse its large discretion in sentencing and the defendant's sentences should be upheld. State v. Spencer, 374 So.2d 1195 (La.1979).
This assignment is without merit.

DECREE
For the above reasons, the defendant's conviction and sentence are affirmed.
NOTES
[*] Judges Fred S. Bowes and Nestor L. Currault, Jr. of the Twenty-Fourth Judicial District Court and Edward Dufresne, Jr., of the Twenty-Ninth Judicial District Court participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Watson.
[1] Ms. Reliford had told the police that the defendant told her, several times during the incident, to "come on and be quiet."