LOBRANO, Judge.
Defendant, Ronald Desdunes, was charged by grand jury indictment with the November 30, 1983 aggravated kidnapping and aggravated rape of Cassandra Millen, a violation of LSA R.S. 14:44 [1] and 14:4%[2], respectively. Defendant was also charged with possession of a firearm by a convicted felon, a violation of LSA R.S. 14:95.1.[3] On *912 January 16, 1984, defendant was arraigned and pled not guilty. Trial was held on the aggravated kidnapping and aggravated rape charges on April 12,1984 and a twelve (12) member jury found defendant guilty as charged on both counts. On April 23,1984, defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, with credit for time served, as to the aggravated kidnapping and aggravated rape convictions. Following the imposition of sentence on these convictions, defendant changed his plea of not guilty on the possession of a firearm by a convicted felon charge to guilty. Defendant waived all delays and was sentenced to ten (10) years at hard labor without benefit of parole, probation or suspension of sentence, with credit for time served. The Court fined defendant $1,000 and suspended the fine. All sentences were ordered to run concurrently.
FACTS:
At approximately 1:30 a.m. on November 30, 1983, Cassandra Millen and her boyfriend Marvin Chapman were returning to Millen’s home from a nearby Popeye’s Fried Chicken restaurant. As they approached the corner of St. Roch and Galvez Streets, defendant pulled up to the side of the street, looked at Millen and then sped off. Shortly thereafter, as the pair approached the corner of Music and Galvez Streets, defendant jumped out from behind a building and placed a sawed-off shotgun to Chapman’s head and grabbed Millen. Millen began to scream. Defendant to Mil-len that if she did not stop “hollering” he was going to kill Chapman. Following this threat, Millen stopped screaming and defendant, released Chapman and ordered him to walk away. Defendant then forced Millen into the truck and drove away. He ordered Millen to sit on the floor and placed the gun against her head. He then ordered her to remove her clothing. After driving for some distance he stopped the truck. He ordered Millen to lie on the seat and proceeded to engage in sexual intercourse with her. Following his rape of Millen, defendant attempted to start the truck but the engine failed to turn over. Defendant exited the truck carrying the gun with him. He ordered Millen to turn the key as he looked under the hood. Millen testified that he fired the gun twice in the air while attempting to start the truck. Defendant forced Millen out of the truck. Just then a police car passed by. Defendant warned Millen not to say anything. Arms linked so as to appear as a couple, defendant forced Millen to walk down the street with him. Meanwhile, Chapman reported Millen’s abduction to her grandmother who contacted the girl’s mother who called the police. Officer Denis Lee first responded to the call. He ordered three two-man cars to search the area. Millen’s mother and Chapman rode in one car. At approximately 2:20 a.m. one of the cars spotted the defendant and Millen walking in the 2600 block of Piety Street. The other police cars were summoned. Defendant was ordered to drop to the ground on his knees. Millen ran to Officer Lee screaming, “I’ve just been raped.” Shortly thereafter, Millen led police to the truck. Inside they found items of her clothing and the sawed-off shotgun.
At trial, criminologist, Charles Krone testified that Millen’s underpants were stained with seminal fluid and spermatazoa. Patricia Daniels of the rape section of the police department testified she examined vaginal swabs and slides, a blood and saliva sample taken from Millen and concluded that Mil-len had had sexual intercourse. Bernell Gould testified that he loaned the truck to defendant, his nephew, but denied that the shotgun found in the truck was his.
*913 Defendant took the stand and testified in his own behalf. He stated Millen ran towards his truck when he stopped at a red light. She got into the truck and Chapman ran up to the truck and told him to pull off. He stated that he and Millen smoked marijuana and that she then asked him to have intercourse with her. He denied exiting the truck, raping Millen or using the gun which he claimed belonged to his uncle.
Defendant appeals his conviction and sentence asserting that there was insufficient evidence to support his conviction for aggravated kidnapping.
Defendant asserts that the state easily presented sufficient proof of every element of the crime of aggravated kidnapping except the essential element of “in order to secure a release of the person under the offender’s actual or apparent control.” LSA R.S. 14:44- Defendant argues that “at no point did the state present evidence that the defendant told the girl that, if he had sex with her, he would let her go.”
When assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Wright, 445 So.2d 1198 (La.1984).
In his single claim of error, defendant asserts that the state failed to prove an essential element of the crime of aggravated kidnapping. Defendant argues the state failed to prove that Millen succumbed to his sexual attack “in order to secure a release of the person under the offender’s actual or apparent control.”
It has long been held that seizure of a person with intent to commit rape satisfies the requirement under La.R.S. 14:44 that the perpetrator has the intent to force the victim to give up anything of apparent present or prospective value. State v. Winn, 412 So.2d 1337 (La.1982); State v. Sonnier, 402 So.2d 650 (La.1981); State v. Rodrigue, 441 So.2d 1274 (La.App. 1st Cir.1983), writs denied, 445 So.2d 436 (La.1984).
Under the facts of the instant case, a rational trier of fact, viewing the evidence in the light most favorable to the prosecution could have found beyond a reasonable doubt that defendant kidnapped Millen with intent to commit rape in exchange for her boyfriend’s release, as well as her own. Jackson v. Virginia, supra.
Defendant frames the issue in purely technical terms asserting that our jurisprudence holds that certain words must be spoken in order to satisfy the requirements of La.R.S. 14:44. Defendant specificálly argues that at no point did the state present evidence that he told Millen “if he had sex with her, he would let her go” and that the absence of such a statement or statements precludes a conviction of aggravated kidnapping. We disagree. Our Supreme Court has upheld aggravated kidnapping convictions without addressing whether the offender stated that the victim’s cooperation would result in her release. State v. Winn, supra; State v. Polk, 376 So.2d 151 (La.1979); State v. Dupre, 369 So.2d 1303 (La.1979).
In addition, the facts surrounding the kidnapping of Millen clearly fulfill the requirements of the statute. Both Chapman and Millen testified that defendant placed a sawed-off shotgun to Chapman’s head and grabbed Millen by the arm. She immediately began resisting by screaming and pulling away at which time defendant gave her the ultimatum to stop screaming or “he would kill Marvin”. Millen immediately ceased resisting. Defendant released Chapman, ordered Millen into the truck and drove away. Thus, the evidence supports the finding that Millen ceased resisting and submitted to the kidnapping which ultimately led to her rape in order to secure Chapman’s release. The fact that Chapman was released first and Millen forced to give up something of value later in order to secure his safety is irrelevant as there is no chronological mandate provided *914 by LSA R.S. WH. All the elements of aggravated kidnapping were fulfilled.
The record has also been reviewed for sufficiency of the evidence to support defendant’s conviction of aggravated rape. LSA RS. U:b2(A)(3).
Aggravated rape occurs when vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed when the victim is prevented from resisting the act because the offender is armed with a dangerous weapon. State v. Foley, 455 So.2d 979 (La.1984).
An examination of the record reveals that the defendant had vaginal sexual intercourse with the victim. The act was committed after defendant held a gun to Millen’s head and that of her boyfriend. Defendant still possessed the gun at the time of the act. Thus, the intercourse can be deemed to have been without the lawful consent of the victim. She was prevented from resisting the act because the defendant was armed with a dangerous weapon. Accordingly, the evidence was sufficient to support a conviction of aggravated rape.
ERRORS PATENT:
La.C.Cr.P. Art. 920(2) requires review of the record for errors patent. We find none.
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.
REDMANN, C.J., concurs with reasons.

. LSA R.S. 14:44:
“Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”

. LSA R.S. 14:42:
"A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim’s age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), "participate” shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
C. Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."

.LSA R.S. 14:95.1:

"A. It is unlawful for any person who has been convicted of first or second degree murder, manslaughter, aggravated battery, aggravated or simple rape, aggravated kidnapping, aggravated arson, aggravated or simple burglary, armed or simple robbery, burglary of a pharmacy, burglary of an inhabited dwelling, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this State, or who has been convicted under the laws of any other state or of the United States or of any foreign govern *912 ment or country of a crime which if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon.
B. Whoever is found guilty of violating the provisions of this section shall be imprisoned at hard labor for not less than three nor more than ten years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars. ..."