GAUDIN, Judge.
Appellant Earl Savage, serving a 50-year hard labor sentence as a multiple offender, was granted an out-of-time appeal. He assigned three district court errors:
(1) the trial judge wrongly denied his pretrial motion to suppress his identification as the perpetrator of a March 5, 1986 aggravated burglary,
(2) the trial judge erred in not granting the motion for a directed verdict at the close of the state’s case, and
(3) the sentence was excessive.
We affirm Savage’s conviction and sentence. He was positively identified; the evidence was sufficient; and we cannot say the sentence, although lengthy, was constitutionally excessive. Savage had two previous felonies, for simple burglary and for armed robbery, before being convicted by a jury of aggravated burglary in the 24th Judicial District Court.
At approximately 8:45 a.m. on March 5, 1986, Henry Jackson went to 2220 Idaho Street, Apt. C, Kenner, Louisiana to install a burglar alarm. Harilyn Camarata lived in the apartment, and she had given the key to Jackson.
Jackson proceeded to an upstairs bedroom. At trial he testified as follows:
”... all of a sudden, I seen a shadow came out the closet. So, as I looked, there was the defendant. As he was coming up, he was coming up to me with a knife. I backed up. I backed into another man in the house. So, I turned around — I didn’t get a good look at him. I said: Oh, Jesus.
“Well, I figured I’m going to die that day anyway. But I was more concentrating on the man with the knife. So, I was going to take my best punch. So, I said, ‘Well, hell,’ I says, ‘Mrs. Camarata’s got y’all working in here; I’m getting the hell out of here.’ And I walked on down the stairway. They walked behind me. I locked the lady’s door. I went to the phone and called the Kenner policeman
Kenner detective Timothy Knox conducted the investigation. Several days after the burglary and after Savage became a suspect, Jackson was summoned to the Kenner police complex to view a photographic lineup. Jackson arrived at the station earlier than expected and saw Knox and Savage while stepping from an elevator. Savage was at the complex to meet with Knox and protest his innocence, saying that he was at his girlfriend’s house on the morning of the crime.
Knox said that Savage was not handcuffed and that there was nothing suggesting that he (Savage) was in custody. Nonetheless, Jackson, according to Knox, “... immediately reached out and grabbed me by the shirt sleeve and said, ‘That’s him.’ ”
Further, Knox stated that the chance encounter by the elevator was unexpected and unplanned. After Savage went on down the hall, Knox said, Jackson again advised: “That’s him. That’s the guy that was in the apartment.”
ASSIGNMENT NO. 1
In this assignment of error, Savage argues that it was incumbent on Knox and the Kenner police to have scrupulously protected his right to a fair and untainted indentification procedure. He also maintains that the foundation for Jackson’s identification during the trial was illegally *584 engendered by the suggestive and prearranged face-off in the police station.
While police can and should be held accountable for their own acts and omissions, they are not, however, answerable for events that occur independently of and without any compelling influence by police officers. See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), and State v. Gervais, 531 So.2d 555 (La.App. 5th Cir.1988).
Here, there is nothing in the record suggesting that Knox or any other Kenner policeman arranged the Jackson-Savage meeting. There was no scheme or design.
Of at least equal importance is the fact that Jackson was not identifying a total stranger. Jackson testified that he was positive in his identification of Savage because he had previously seen appellant “... in the area, like I say, three, four, five or six times ...”
Even if a pretrial identification is the product of impermissible suggestion, although we are not saying that such was the case here, a later in-court identification can stand if it has an independent basis. See State v. Winn, 412 So.2d 1337 (La.1982). Jackson recognized Savage as someone he had seen before in the neighborhood and as the man he had seen in Ms. Camarata’s apartment.
There seems little likelihood of an irreparable misidentification. Jackson even noticed that Savage had changed his hairstyle from the time of the burglary to the time he was identified in the station less than a week later.
ASSIGNMENT NO. 2
This assignment of error states that the trial judge should have granted the motion for a directed verdict after the prosecution presented its case.
Aggravated burglary, LSA-R.S. 14:60, is thusly described:
“Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
“(1) Is armed with a dangerous weapon; or
“(2) After entering arms himself with a dangerous weapon; or
“(3) Commits a battery upon any person while in such place, or in entering or leaving such place.”
To prove aggravated burglary here, the prosecution must show that Savage, armed and without authority, entered Ms. Camar-ata’s dwelling with the intent to commit a felony or theft.
The standard to be used is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of each element of the crime charged beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and State v. Brooks, 505 So.2d 714 (La.1987).
In addition to Jackson’s testimony about Savage being in the apartment, armed and wearing gloves, the state presented evidence of the forced break-in through a window and Ms. Camarata’s testimony about the disarrayed condition of her apartment. Ms. Camarata further testified that she knew Savage and that she had not given her consent for him to be inside her residence.
Specific intent may be inferred from the circumstances of the transaction and from the actions of the defendant, in accord with LSA-R.S. 15:445. If Jackson’s testimony is accepted, and no doubt it was by the trial judge as he denied Savage’s motion for a directed verdict, the circumstances do indicate that Savage intended to commit a felony or theft. Upon discovery, Savage, according to Jackson, offered no excuse for his presence and immediately left the apartment.
The state’s case wasn’t perfect. Jackson was not sure whether Savage was wearing a black or blue jacket and he (Jackson) wasn’t positive if Savage was wearing high-top tennis shoes or white rubber boots. Jackson’s identification and the overall evidence, however, appear convine- *585 ing, and the trial judge did not err in denying the motion for a directed verdict.
The jury, too, accepted Jackson’s testimony, along with the state’s supporting evidence, and found Savage guilty as charged.
ASSIGNMENT NO. 3
Following conviction, Savage was sentenced to 50 years at hard labor. The maximum penalty for aggravated burlgary is 30 years at hard labor but LSA-R.S. 15:529.1 provides, in part, that if the defendant is a three-time felony offender, he can be sentenced to a term “... not less than one-half the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.” Savage, therefore, could have received a sentence from 15 to 60 years.
Appellant, while admitting prior convictions for simple robbery and armed robbery, nonetheless argues that his sentence was excessive. He did not, he points out, inflict bodily harm upon Jackson; and the trial judge was unaware of his (Savage’s) physical, mental or family background.
At the sentencing hearing, the trial judge said:
“The Court, at this time, then, is going to sentence you to fifty years at hard labor. And I’m giving you hard labor instead of probation because there’s an undue risk that during the period of suspended sentence or probation that you would commit another crime, that you’re in need of correctional treatment and a custodial environment that can be provided more effectively by your commitment to an institution. A lesser sentence would deprecate the seriousness of your crime. So, at this time, the Court will remand you to the Louisiana Department of Corrections.”
The sentencing judge in Louisiana is given fairly wide discretion within statutory limits, and only when this authority is abused should a sentence be set aside as excessive. Of Savage’s three offenses, two involved weapons. Because of this, we are unable to find the 50-year term beyond the trial judge’s discretion.
AFFIRMED.