464 So.2d 1104 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
W.D. "Dub" SIMPSON, Defendant-Appellant.
No. CR84-242.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
*1106 David L. Wallace, Bradley Wallace & O'Neal, De Ridder, for defendant-appellant.
William E. Tilley, Dist. Atty., Leesville, for plaintiff-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
The defendant, W.D. "Dub" Simpson, was arrested on April 18, 1983. On April 28, 1983, a Vernon Parish grand jury returned an indictment on Mr. Simpson, his wife Bertha, and Gary Eason, charging them with one (1) count of conspiracy to commit simple criminal damage to property, a violation of La.R.S. 14:56 and 14:26; and three (3) counts of simple criminal damage to property, violations of La.R.S. 14:56. Both Mr. Simpson and Bertha were arraigned on May 2, 1983. Mr. Simpson was tried before a jury of six persons on September 12, 1983.
The jury returned a verdict of guilty to count one, conspiracy to commit simple criminal damage to property and guilty to count two, simple criminal damage to property in excess of $500.00. The jury also returned responsive verdicts, on counts three and four, of guilty of simple criminal damage to property amounting to less than $500.00 on each count.
On November 22, 1983, after a pre-sentencing investigation was had, the defendant was sentenced to serve:

*1107 Count 1One year at hard labor with the Louisiana Department of Corrections on the conspiracy conviction;
Count 2Two years at hard labor with the Louisiana Department of Corrections, consecutive to the sentence imposed for count one;
Count 3Ninety days in the Vernon Parish Jail to be served concurrently with the sentences imposed in connection with counts one and two;
Count 4Ninety days in the Vernon Parish Jail to be served concurrently with the sentences imposed in counts one, two and three.
The defendant appeals his conviction and sentence. We affirm.

FACTS
On March 26, 1983, the defendant, W.D. "Dub" Simpson, along with Mr. Gary Eason and Mrs. Bertha Simpson (defendant's wife), conspired to cut down several barbed wire fences running along a 3 mile stretch of pastureland in Vernon Parish. During the late night hours of March 26, 1983, and into the early morning hours of March 27, 1983, the defendant and Mr. Eason cut down over two miles of barbed wire fence on three adjacent tracts of land.
The three adjacent tracts of land were separately owned by B.L. and P.W. Simpson and/or Kirby Forest Industries, Inc., Mrs. Jessie Sowells and Mr. Leo L. Denmond. The fence that was destroyed by defendant followed a line approximately ten feet inside the outer boundary of the tracts and ran in a continuous line for nearly three miles. Defendant and his cohort followed this fence line, indiscriminately cutting the barbed wire from post to post.
Each owner individually built his fence to comply with a recently enacted stock ordinance which forbids residents from allowing cattle to roam freely. Defendant's only complaint about the fences was that they made access to local hunting and fishing spots more difficult. However, defendant never proved he had any right to free access to these spots.
An investigation by the Vernon Parish Sheriff's Office led to defendant and Gary Eason. Both were arrested on the aforementioned charges. Mr. Eason, in a plea bargain agreement with the District Attorney's Office for the Thirtieth Judicial District, made a full confession of his role in the damage to the fences and identified the defendant as the organizer of the undertaking.
Following a trial before a six person jury the defendant was convicted and sentenced as hereinabove stated. The defendant alleges 13 assignments of error for our review. They are:
1. Trial court erred by failing to grant a motion to quash in which the defendant asked that the count of conspiracy, in simple criminal damage to property, be severed.
2. Trial court erred by failing to grant a motion to quash, based on the multiplicitous charging of the defendant, by charging him in three counts of simple criminal damage to property, when in fact, there was only one act of simple criminal damage to a common fence that ran across property belonging to three individuals.
3. Trial court erred by failing to quash the bill of indictment lodged against the defendant because double jeopardy would force him to be exposed to possible punishment on three charges of simple criminal damage to property when there was only one actus rea and only one act of criminal activity.
4. Trial court erred by failing to quash the indictment lodged against the defendant because as indicated by the trial record, this fencing was in fact owned by the Lessor of the fence, Kirby Forest Industries, Inc., and not by any of the other individuals represented in the bill of indictment.
5. Trial court erred by failing to grant the Motion In Limine filed by the defendant prior to trial, in that it was prejudicial to defendant to force him to go to Court and ask that the jury be *1108 excused before the Court to examine admissions allegedly made by the defendant out of the presence of the jury. That prior to trial, it was indicated that there were 25 to 28 admissions that the prosecution would attempt to introduce, and counsel for defendant was forced to object on each and every one and ask that the Court excuse the jury. It is contended that the Court erred because this forced counsel for defendant into action that may have prejudiced the jury against the defendant.
6. Trial court erred by admitting physical evidence, as testified to by P.W. Simpson and Bryant Simpson, as to receipts and other items of evidence, which were not in proper form, in that they were not the best evidence because they were copies of said receipts.
7. Trial court erred by admitting as a State exhibit the drawing by Det. Willard Horton. Det. Horton testified that he had no expertise in this field, and in fact, the drawing was not drawn to scale in any fashion, and in fact, was drawn from the notes of another individual. Allowing this drawing into evidence prejudiced defendant's right to a fair trial.
8. Trial court erred by failing to declare a mistrial when Gary Eason admitted giving other oral statements to Det. Willard Horton, which were statements of a co-conspirator and co-defendant and were not provided to defense prior to trial.
9. Trial court erred by failing to declare a mistrial when, after the testimony of one Paul Pickett, it became clear that there were other statements made by the defendant in telephone conversations with Mr. Pickett at the behest of Vernon Parish Sheriff's Office, and this statement was not given to defense counsel prior to trial, pursuant to Discovery Motions and Bill of Particulars.
10. Trial court erred by admitting evidence, in allowing the testimony of one Jessie Sowells, as to his ownership of the fence, in that he could produce no receipts, or otherwise, as to the money he allegedly put into the building and construction of the fences.
11. Trial court erred by allowing evidence to be admitted by one Leo Denmond, and during the testimony of Leo Denmond, as to a photostatic copy which was admitted into evidence, which should have been excluded because it was not the best evidence available as to that individual, in the fact that he had testified that the original list of documents should have been available.
12. Trial court erred by sentencing the defendant to an excessive sentence.
13. Trial court erred by admitting statements allegedly made by the defendant in Simmons Hardware, in that they were not admissions against interest and could only serve to inflame the jury, and the probative value was very limited, and said admissions were made to Bryant Simpson.

ASSIGNMENTS OF ERROR NUMBERS 1-4
Through these assignments, the defendant argues that the trial court erred in denying his motion to quash. He alleges prejudicial joinder, multiplicitous charging, double jeopardy, and that there was only one crime committed concerning one fence owned solely by Kirby Forest Industries.
Defendant argues that the three counts of criminal damage to property and the one count of conspiracy should not have been joined and that such joinder was prejudicial and caused the jury to be hostile toward defendant. Briefly stated, the defendant argues that the four counts charged in the indictment should not have been tried together because the jury was certain to infer, merely because of the cumulative evidence, that defendant was guilty of something. The Code of Criminal Procedure and the settled jurisprudence do not support this argument. See State v. Winn, 412 So.2d 1337 (La.1982); State v. Washington, *1109 386 So.2d 1368 (La.1980); Drew v. United States, 331 F.2d 85 (D.C.Cir.1964); United States v. Weber, 437 F.2d 327 (3d Cir.1970); State v. Webb, 364 So.2d 984 (La.1978); and La.C.Cr.P. Article 493; and La.C.Cr.P. Article 495.1.
In State v. Washington, the Louisiana Supreme Court outlined the various factors to be considered by a lower court in applying La.C.Cr.P. Article 495.1 concerning the severance of offenses:
"... the trial court must weigh the possibility of prejudice versus the important considerations of judicial economy and administration. In determining whether prejudice may result from the joinder, the Court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile."
State v. Washington, 386 So.2d at 1371.
In the present case there is no showing that the jury was either confused by the various counts or unable to segregate the charges and evidence presented on each. Here, the defendant was charged with three counts of the same offense. Once the elements of the crime were made clear, the jury needed only to weigh the evidence presented as to each owner who suffered a loss. There was nothing confusing about the jury determining what damage each owner suffered and whether or not defendant caused that damage. The counts joined in the present case were not an accumulation of a variety of serious criminal offenses which might prejudice a jury but were merely three instances of the same criminal offense which defendant accomplished in one spree on the same night.
In State v. Webb, 364 So.2d at 988, the State joined charges of aggravated kidnapping, armed robbery, and attempted aggravated rape. All three offenses arose out of the same crime spree. Id. at 989. The Court held that there was no indication that the jury was hostile or that the jury was overwhelmed by the cumulation of these serious charges and therefore ruled that the offenses were not improperly joined. Id. Likewise, in State v. Winn, 412 So.2d at 1342-3, where the defendant was charged with eight separate offenses that arose out of the same crime spree, the Court refused to sever the charges. In both Webb and Winn, the offenses "were closely related in point of time and basically arose out of one continuing transaction" during a crime spree, and were therefore properly joined. State v. Webb, 364 So.2d at 989.
Defendant argues that there was multiplicitous (or duplicitous) charging by the prosecution accusing him of three counts of criminal damage to property, when there was only one action taken by defendant. This assignment of error is without merit. Duplicity in an indictment does not apply to the joinder in one indictment of several counts for different offenses. Slovenko, The Accusation In Louisiana Criminal Law, 32 Tul.L.Rev. 47, 71 (1957). Duplicity is the charging of more than one distinct crime in one count of an indictment. Id. In this case, the prosecution did not charge more than one distinct crime in any of the counts of the indictment.
Defendant also argues that he is being placed in double jeopardy because prosecution charged him with three counts of criminal damage to property, when there was only one act of criminal conduct. The Louisiana Code of Criminal Procedure provides for the joinder of offenses:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting *1110 parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
La.C.Cr.P. art. 493.
The offenses charged herein did arise out of the same act and were indeed all part of a common scheme to destroy a fence row which stretched over almost three miles of private property owned by various private concerns. The defendant was charged with conspiracy to commit criminal damage to property. The record demonstrates sufficient proof of this offense. Defendant makes no argument that the evidence was not sufficient. The defendant was also charged with three counts of criminal damage to property. The State showed that not only did defendant conspire with others to wantonly destroy what he knew to be the private property of others, but it showed that he knowingly and intentionally destroyed the fences of three different parties in the community. Thus, he was properly charged with three separate counts of the same criminal offense. See State v. Gipson, 359 So.2d 87, 91-92 (La.1978).
The State proved that the continuous line of barbed wire fence, stretching over two or three miles of private property, did in fact belong to at least three different individuals. As such, each count required proof of elements unique to each charge. It would not have been enough for the State merely to prove that defendant in fact cut down this long stretch of fence. It was necessary that the State demonstrate the defendant knew that different sections of the wire fence were owned by different individuals, what the separate damages of each amounted to, whether or not each owner had consented to what was done and whether or not defendant had a vested property interest such that he would have a legal right to destroy or remove the fence from a given piece of property.
There was evidence which proved elements common to each offense charged; namely, the evidence that showed defendant took part in cutting down the entire length of fence spanning the private property of three different individuals. Nevertheless, defendant's actions, though physically identical in each instance, i.e. cutting a fence, constituted a separate offense each time he crossed over a property line and knowingly destroyed a different owner's fence. That the fences were contiguous and outwardly appeared to be but one long barbed wire fence is of no moment. The State demonstrated that defendant knowingly and intentionally damaged the fence of Jessie Sowells, which in and of itself constituted one count of criminal damage to property. The State demonstrated that defendant knowingly and intentionally damaged the fence belonging to P.W. and B.L. Simpson and/or Kirby Forest Industries, which in and of itself constituted another count of criminal damage to property. And the State demonstrated that defendant knowingly and intentionally damaged a fence belonging to Leo Denmond, which also in and of itself constituted yet another count of criminal damage to property. That defendant was able to accomplish these acts in one location rather than having to travel from one area to another does not mean that he committed only one criminal offense. Had defendant destroyed the fence of A in one part of the parish, fence B in another area, and fence C in yet another, there is no doubt that an indictment or bill of information could have been issued charging three separate counts of criminal damage to property. That the contiguity of the fences destroyed enabled defendant to accomplish his criminal purpose all at once does not alter the fact that he committed three separate acts of criminal damage to the property of others. Thus, the indictment properly charged defendant with three counts of criminal damage to property.
Finally, defendant argues that there was only one crime committed because the fence was owned by only one party, Kirby Forest Industries. As stated above, the State proved that defendant knowingly and intentionally destroyed the fences of three different parties. Therefore, this assignment of error is without merit.
*1111 For the reasons stated above, assignments of errors one, two, three and four are without merit.

ASSIGNMENT OF ERROR NO. 5
Through this assignment the defendant argues that the trial court erred in denying defendant's motion in limine filed prior to trial. Through this motion the defendant sought to examine admissions allegedly made by defendant which defendant believed would be introduced at trial. The defendant believed that the prosecution intended to introduce some 25 to 28 admissions which defendant believed constituted impermissible hearsay. Through this motion the defendant wished to examine those admissions before the trial so that he would not be forced to make numerous objections at trial. Defendant maintains that because he had to make so many objections at trial and because the jury had to be removed so frequently, the jury was prejudiced and was led to believe that defendant had something to hide.
The defendant cites no authority for his assertions and the record does not reflect that the jury was either prejudiced or hostile toward him. The defendant was merely anticipating what might be introduced in evidence and was premature in his objection to such evidence. In essence, defendant was attempting to try a large part of the case outside the presence of the jury before the trial even began. It should be noted that a number of these "admissions" were never introduced at trial and the problem anticipated by defendant never materialized.
The law requires "contemporaneous objections"; that is, objection at the time of its occurrence to evidence which defendant believes is inadmissible. State v. Richmond, 278 So.2d 17, 21 (La.1973); see also State v. Vince, 305 So.2d 916, 921 (La. 1974); La.C.Cr.P. art. 841. The record reflects that defendant had the opportunity, and did object during the trial when any question arose as to the admissibility of any evidence. Defendant neither makes a showing that a pre-trial hearing was necessary to protect his rights at trial nor does he make any showing that denial of this motion resulted in any prejudice toward the defendant. For the reasons stated, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6
Through this assignment the defendant argues that the trial court erred in allowing into evidence copies of receipts rather than the original receipts contrary to the best evidence rule.
Defendant was charged in count two with simple criminal damage to the property of B.L. and P.W. Simpson and/or Kirby Forest Industries in excess of $500.00 but less than $50,000.00, a violation of La.R.S. 14:56.
"A. Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in R.S. 14:55, by any means other than fire or explosion.
B....
Where the damage amounts to five hundred dollars but less than fifty thousand dollars, the offender shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than two years, or both."
LSA-R.S. 14:56. Thus, it was incumbent upon the State to prove that the damage to the Simpsons' property exceeded $500.00. State Exhibits S-8 and S-8-1, an invoice from Hebert Lumber Co. for $578.96 for barbed wire and the personal check written by Mrs. P.W. Simpson to Hebert Lumber Co. for $578.96 with a notation on it "Barbed Wire," proved that the damages were in excess of $500.00. This, along with the testimony of B.L. and P.W. Simpson clearly established that the damage to their property exceeded $500.00. The State introduced several other photostatic copies of invoices, bills, etc. further demonstrating the amount of damage incurred by the Simpsons. The originals of these bills and invoices were not available. First, it should be noted that defendant has shown no prejudice suffered as a result of the admission of this evidence. The fact at *1112 issue was proved without the evidence defendant claims is inadmissible. "Absent a showing of some prejudice to the defendant, the `best evidence' rule will not be applied unreasonably." State v. Bennett, 341 So.2d 847, 855-6 (La.1976).
The trial court committed no error in admitting the photostatic copies rather than requiring that the originals be produced because the defendant failed to make any showing that the copies were not accurate reflections of the original.
The Louisiana Supreme Court states that:
"... where a document offered in evidence is a mechanical reproduction of the original, and is thus the substantial equivalent of the original, admission over objection is reversible error only upon a showing that the content of the purported copy does not accurately reflect that of the original. State v. Vincent, 338 So.2d 1376 (La.1976); State v. Jackson, 296 So.2d 320 (La.1974)."
State v. Stuart, 344 So.2d 1006, 1009 (La. 1977); See also State v. Demouchet, 353 So.2d 1025, 1028 (La.1977).
For the reasons stated, this assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 7, 10 AND 11
Through these assignments, the defendant argues that the trial court erred in admitting certain evidence. As all three assignments concern a question of the weight and credibility of the evidence and not a question of admissibility they will be discussed together.
Through assignment number seven the defendant asserts that the court erred in admitting into evidence a diagram of the crime scene because it was not drawn to scale. It should be noted that Detective Willard Horton made it clear during his testimony that the diagram was not drawn to scale and was merely made to show distances and directions of the cut fences. In addition, the defendant fully cross-examined the witness concerning the diagram allowing the jury to determine the weight and credibility of that evidence.
The defendant asserts that because the one who drew this diagram has no skill or expertise as a draftsman the drawing should not have been admitted.
The Louisiana Supreme Court has stated that:
"The lack of skill as a draftsman and the inaccuracies of the drawing go to the weight to be accorded to the sketch but do not defeat its admissibility."
State v. Lawrence, 365 So.2d 1356, 1358 (La.1978).
It has further held that:
"Maps or diagrams generally are admissible to aid the jury in understanding testimony if shown to be an accurate representation of the subject matter in question and the ruling of the trial court relative to admissibility will not be disturbed on appeal unless there has been abuse of discretion. 3 Wharton's Criminal Evidence, sec. 641 (13th ed. Torcia, 1973). See also United States v. Goodwin, 470 F.2d 893 (5 CA 1972). In State v. Triplett, 285 So.2d 532 (La.1973), where the arresting officer had returned to the scene and drawn a sketch, this court held that admission of the sketch at trial was not an error. In so concluding, this court noted that the fact that the sketch was not absolutely accurate in every detail and distance did not negate its relevancy or render it inadmissible, but rather would go to the weight accorded the sketch by the jury."
State v. Andrews, 369 So.2d 1049, 1051 (La.1979); See also State v. Toomer, 395 So.2d 1320, 1332 (La.1981); State v. Prestridge, 399 So.2d 564, 573 (La.1981); and State v. Chapman, 410 So.2d 689, 697 (La. 1981).
In State v. Chapman, the defendant argued that a drawing of the crime scene made by an officer was offered as an accurate representation of the crime location but was not drawn by a draftsman and was not made to scale. The Court held:
"The diagram was offered into evidence at the close of the state's case in *1113 chief. The state did not represent that the drawing was an accurate diagram of the area, but merely offered it to show the relative locations of various key spots involved in this crime. Such evidence has been held to be admissible by this Court, which has pointed out that:
`In Louisiana the rule concerning the introduction of demonstrative evidence is that the foundation laid must establish that it is more probable than not that the evidence is connected with the case and that the evidence has some relevance which the trial court considers sufficient to warrant its introduction. State v. Drew, 360 So.2d 500, 518-19 (La.1978)' State v. Andrews, 369 So.2d 1049, 1050-51 (La.1979)." [sic]
"In State v. Lawrence, 365 So.2d 1356, 1358 (La.1978), the Court pointed out that:
`The lack of skill as a draftsman and the inaccuracies of the drawing go to the weight to be accorded to the sketch but do not defeat its admissibility.'
"Similarly, in this case, the defendant had the opportunity, on cross-examination of Chief Tyrney, to point out to the jury any inaccuracies in the diagram."
State v. Chapman, 410 So.2d at 697-8.
For the reasons stated above, assignment of error number seven is without merit.
Through assignments of error numbers ten and eleven the defendant argues that the court erred in admitting the testimony of Jessie Sowells concerning his ownership of part of the fence that was cut as he could produce no written receipts or bills to establish the value of his loss. The defendant also argues that the testimony of Leo Denmond concerning his damages as well as the introduction of a photostatic copy of a bill owed by Leo Denmond to P.W. and B.L. Simpson for building the fence should not have been admitted.
Defendant cites no authority for his proposition that a witness cannot give oral testimony as proof of property ownership and as proof of the value of that property. Defendant offers no reason why such evidence should be inadmissible. Furthermore, defendant has not shown that the introduction of this evidence resulted in a prejudicial outcome. On the contrary, the jury was not convinced that Mr. Sowells and Mr. Denmond had suffered damages in excess of $500.00. In assessing the weight accorded the testimony in question, the jury believed that the State had not offered sufficient evidence to establish that the damages exceeded $500.00. Therefore, the jury returned responsive verdicts to counts three and four. The jury found defendant guilty of a misdemeanor offense for damages under $500.00 on each count.
For the reasons stated above, these assignments are without merit.

ASSIGNMENTS OF ERROR 8 AND 9
Through these assignments the defendant argues that the trial court erred by failing to declare a mistrial on two occasions. First, the defendant alleges that the trial court should have declared a mistrial when Gary Eason, the State's chief witness, testified that he had made exculpatory statements to Detective Horton, which statements were not made known to defendant through discovery.
The defendant argues that under La.C. Cr.P. art. 722, exculpatory evidence or statements made by a codefendant shall be produced upon motion of the defendant.
"Under Brady [Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], the suppression of favorable evidence by the prosecution, when production of such evidence is requested, violates due process when the evidence is material to either guilt or punishment, regardless of the good or bad faith of the prosecution."
State v. Perkins, 423 So.2d 1103, 1107 (La. 1982). See also State v. Landry, 381 So.2d 462 (La.1980); State v. Davenport, 399 So.2d 201 (La.1981); and State v. Ates, 418 So.2d 1326 (La.1982).
The statement which the defendant refers to was Gary Eason's repeated response to Detective Horton's inquiry into *1114 Mr. Eason's knowledge and/or involvement in the fence cutting episode. Detective Horton quoted Mr. Eason as repeatedly responding "I don't know what you are talking about."[1] After lengthy questioning, Mr. Eason finally confessed to his part in the crime as well as to the defendant's role in committing the damage to the fences. Detective Horton informed the district attorney that Eason at first "neither admitted or denied knowledge or involvement." [2] In response to defendant's motion for discovery, the State informed the defendant concerning Mr. Eason's remarks but did not include the statement "I don't know what you are talking about" as an exculpatory statement for defendant. The trial judge stated his reasons for denying the motion for mistrial:
"I have no reason to believe really, that he [Eason] said anything other than `I don't know what you are talking about.' The court is inclined to consider this more in the nature of an evasive statement out of self-interest than to consider it evidence that would be exculpatory to the defendant."[3]
It does not appear that the remark in question comprises anything of an exculpatory nature. However, even if the remark was exculpatory in nature and the State was remiss in failing to disclose it, the defendant suffered no prejudice from the State's failure to disclose the statement. See State v. West 408 So.2d 1114, 1122 (La. 1982). The record shows that defendant knew Eason made the remark and that defendant fully cross-examined Eason concerning the remark.
The defendant argues that the failure to disclose Eason's remark had a negative impact on his ability to prepare for trial. The United States Supreme Court has refused to accept a standard for materiality of "Brady material" based on the impact to a defendant's ability to prepare for trial. United States v. Agurs, 427 U.S. 97, 112 n. 20, 96 S.Ct. 2392, 2401 n. 20, 49 L.Ed.2d 342, 354-55 n. 20 (1976). The Supreme Court recognized that:
"First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge."
United States v. Agurs, 96 S.Ct. at 2401 n. 20.
Through assignment of error number nine, the defendant argues that again the trial court erred in denial of his motion for mistrial based on the testimony of Mr. Paul Pickett. The defendant argues that, as Mr. Pickett testified, detective Horton instructed and/or coerced Mr. Pickett into making a phone call to "Dub" Simpson and that the State failed to make tapes of these calls available to defendant.
Detective Horton, however, testified that no such phone calls were ever made by Mr. Pickett under his or anyone else's direction and that no such tapes exist.
From the record it is clear that, after having heard the two witnesses testify on the matter, the trial judge believed that no such phone calls were ever made and consequently there were no tapes for the State to make available to defendant.
"Your motion is denied at this time counsel. Clearly you are entitled if a statement exists to a statement. The only thing that the court might base an assumption that a statement existed on would be the testimony of Mr. Pickett. Mr. Pickett jumped to a conclusion or an assumption that there was a recording. Quite frankly, having heard Mr. Pickett, if Mr. Pickett told me the sun was shining real bright, I'd call a delivery man and get him to bring me some coal oil so *1115 that I could have light. I don't believe a thing the man said. And, I reject the notion that the evidence establishes that any statement ever existed from this defendant or from anyone else through his agency."[4]
Review of the record makes it clear that the trial judge did not abuse his discretion in denying the motion for mistrial. The only "evidence" supporting that motion was the testimony of Mr. Pickett which the trial judge found wholly unreliable and unbelievable. Absent a showing of abuse of discretion, the trial judge's denial of the motion for mistrial will not be disturbed on appeal. State v. Manning, 380 So.2d 54, 58 (La.1980); State v. Fuller, 414 So.2d 306, 308 (La.1982). For the reasons stated above, these assignments are without merit.

ASSIGNMENT OF ERROR NO. 12
Through this assignment the defendant argues that the sentences imposed constitute an excessive sentence.
In accordance with La.C.Cr.P. art. 894.1, the trial judge set forth his rationale for the length and imposition of the sentence. During the pre-sentencing hearing, the trial judge found that defendant had not taken heed of prior leniency by the court system. Defendant has been convicted of crimes on at least four previous occasions. One of the convictions was for a felony and another of the convictions was for criminal damage to propertythe same crime involved in this case. In each instance, he received a suspended sentence and was placed on supervised probation. The trial judge further found that defendant, or others on his behalf, made threats of personal injury to investigating officers and witnesses. This conduct created a high state of tension in the community. Also, there was no attempt made by defendant to compensate the victim for their expenses incurred because of defendant's criminal conduct.
The trial judge considered mitigating factors; such as, defendant and his victims are either long term neighbors or related, the criminal conduct may have been a result of a long term dispute between him and his relatives, and imprisonment might impose some psychological hardship upon defendant. However, the record of the sentencing hearing shows the trial judge felt that a lesser sentence would deprecate the seriousness of the crime and that there was an undue risk the defendant will commit another crime.
"Given compliance with La.Code Crim.P. art. 894.1, a sentence will not be set aside as excessive absent manifest abuse of the trial judge's sentencing discretion. State v. Spencer, 374 So.2d 1195 (La.1979); State v. Sepulvado, [367 So.2d 762 (La.1979)]. The penalty imposed must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980)."
State v. Smack, 425 So.2d 737, 740 (La. 1983). We do not find the sentence imposed to be so disproportionate to the crime as to shock our sense of justice.
Defendant also argues that the trial judge erred by making the first two sentences run consecutive.
"For an offender without prior felony record, ordinarily concurrent rather than consecutive sentences should be imposed, especially where the convictions arise out of the same course of conduct within a relatively short period. State v. Jacobs, [383 So.2d 342 (La.1980)]. However, consecutive sentences may be justified when, due to his past conduct or repeated criminality over an extended period, the offender poses an unusual risk to the safety of the public, similar to those posed by habitual or by dangerous offenders."
State v. Carter, 412 So.2d 540, 546 (La. 1982).
In State v. Carter, the defendant was convicted of the extremely heinous crimes *1116 of aggravated rape and attempted murder. In that respect, State v. Carter can be distinguished from the present case. However, in the instant case, the record of the sentencing hearing shows the trial judge found defendant Simpson had previously been convicted of a felony offense and his past conduct and repeated criminality created a high state of tension in the community. Under the circumstances we are unable to say that the trial judge abused his discretion in making the sentence for conspiracy to commit criminal damage to property consecutive with the sentence for criminal damage to property.
For the reasons stated above, assignment of error number twelve is without merit.

ASSIGNMENT OF ERROR NO. 13
Defendant has failed to brief this assignment, it is therefore considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La. App.3d Cir.1983).

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] See Record p. 444-45.
[2] See Record p. 445.
[3] See Record p. 453.
[4] See Record p. 685-6.