499 So.2d 132 (1986)
STATE of Louisiana, Appellee,
v.
Clifford REED, Appellant.
No. 17682-KA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1986.
*135 Elijah Orum Young, Jr., Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, James Allan Norris, Jr., Dist. Atty., Earl Cox, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
The defendant, Clifford Reed, was charged with three counts of distribution of marijuana, contrary to the provisions of LSA-R.S. 40:966. A twelve person jury found him guilty on all three counts charged. Subsequently, the trial court judge imposed a sentence of three years at hard labor for Counts 1 and 2 and four years hard labor for Count 3 to run consecutively to Counts 1 and 2. On appeal, the defendant has raised six assignments of error. Assignment of Error No. 4 has not been briefed and, therefore, is considered abandoned. We find no merit to the remaining assignments of error and affirm the defendant's convictions and sentences.
On July 22, 1983, Officers Bobby Tillman and Larry Buford of the Monroe Police Department were assisting the Ouachita Metro Narcotics Unit in an undercover capacity when they learned that a black male known only as "Cliff" was selling marijuana at the Plantation View Apartments in Monroe, Louisiana. The officers, accompanied by a confidential informant, drove to the apartments seeking the whereabouts of "Cliff." After a black male identified himself as the person they sought, Tillman asked if he had marijuana for sale. Cliff answered affirmatively and motioned for the officers and the confidential informant to enter his apartment. The defendant went down a hallway in the apartment and returned with three clear plastic bags of what was later determined to be marijuana which he handed to Officer Tillman. Tillman handed Officer Buford one bag and Buford gave the defendant $25. Tillman retained a bag, gave the defendant $25 and returned the remaining bag to the defendant. Officers Tillman and Buford testified that the confidential informant neither handled the drugs nor the money.
Officers Tillman and Buford later contacted the defendant on August 4, 1983, when another transaction was conducted at the same location. On this occasion, Buford entered the apartment and bought marijuana while Tillman waited in the car. The confidential informant was not with them at this time.
An arrest warrant was subsequently issued to be executed as part of a general "round-up" of suspects. However, defendant could not be found until June 6, 1984, when he was recognized by Officer Tillman who was responding to a disturbance call in connection with his regular patrol duties. After confirming that an outstanding arrest warrant for "Cliff" existed, Tillman approached Reed and arrested him. When informed of the nature of the charges against him, the defendant stated that "he was glad all this marijuana stuff was over."

ASSIGNMENT OF ERROR NO. 1

DOUBLE JEOPARDY
Defendant assigns as error the trial court's denial of his Motion to Quash Count 2 of the Bill of Information. Reed contends that he is being punished twice for criminal conduct that constituted only one transaction. Defendant argues that the second count was invalid on grounds of duplicity and double jeopardy.
The record establishes that Reed was charged by bill of information with three counts of distribution of marijuana. Counts 1 and 2 are alleged to have occurred on the July 22nd meeting between *136 the two undercover officers and the defendant. The bill of information does not specify to whom the defendant distributed the marijuana. The record shows that after Officer Tillman testified in the state's case-in-chief and defense counsel orally moved the court to quash the second count on grounds of double jeopardy. Counsel argued that the evidence showed that the suspect transferred the marijuana directly to Officer Tillman who then transferred the marijuana to Officer Buford. Reed contends that he engaged in only one distributionto Tillmanand that he cannot be held responsible for Tillman's distribution to Buford. The trial court denied the motion without reasons.
Our procedural scheme in criminal proceedings contemplates that double jeopardy issues be raised by a written motion to quash. LSA-C.Cr.P. Arts. 535 and 593. An objection to the misjoinder of offenses may be urged only by a motion to quash the indictment. LSA-C.Cr.P. Art. 495. While we take cognizance of the aforementioned procedural defects in the instant case, we consider and resolve defendant's position on the merits of the issue.
Both the state and federal constitutions provide that no person shall twice be put in jeopardy of life or liberty for the same offense. U.S. Const. Amend. V; LSA-Const. Art. I, § 15 (1974); and LSA-C.Cr.P. Art. 591. The double jeopardy clause protects the accused against multiple punishment for the same offense as well as a second prosecution for the same offense after acquittal or conviction. State v. Coody, 448 So.2d 100 (La.1984).
Defendant Reed was charged with two counts of distribution of marijuana on the same date. The defendant argues that he transferred the marijuana directly to Officer Tillman who then transferred the marijuana to his fellow officer. The defendant, therefore, contends that the transaction was one distribution.
The following cases provide helpful analogies. In State v. Simpson, 464 So.2d 1104 (La.App. 3d Cir.1985), defendant was charged with three counts of simple criminal damage to property in violation of LSA-R.S. 14:56. Defendant and another cut down over two miles of barbed-wire fence on three adjacent tracts of land. The three tracts of land were separately owned by three individuals.
Simpson argued that he was placed in double jeopardy because the prosecution charged him with three counts of criminal damage to property when there was only one act of criminal conduct. Relying upon LSA-C.Cr.P. Art. 493, the court noted that the offenses charged did arise out of the same act and were all part of a common scheme to destroy a fence row. However, the court concluded that the property of three different parties had been destroyed and thus the defendant was properly charged with three separate counts of the same offense.
In State v. Gipson, 359 So.2d 87 (La. 1978), Gipson was charged by bill of information with three counts of armed robbery stemming from a grocery store robbery in Shreveport where the patrons were also individually robbed. Defendant argued double jeopardy on the basis that only one armed robbery occurred with three victims rather than three separate armed robberies. Thus, the issue was whether the fact that the state charged the defendant with separate acts of armed robbery where the defendant had simultaneously robbed several victims subjected the defendant to double jeopardy. The Louisiana Supreme Court concluded that LSA-R.S. 14:64 intended to protect each person offended in an armed robbery and therefore each person robbed was the victim of a separate crime. "It is not double jeopardy therefore to punish the robber for each person he subjects to this offensive conduct."
The Court in Gipson relied upon State v. McCarroll, 337 So.2d 475 (La.1976), wherein McCarroll entered a restaurant, brandished a weapon and warned that anyone who moved would be killed. Consequently, McCarroll was charged with nine counts of aggravated assaultone count for each *137 victim present in the restaurant during the incident. The court rejected McCarroll's double jeopardy argument that only one assault with multiple victims was involved. Delving into the legislative intent of LSA-R.S. 14:36-37 (aggravated assault) and 14:33 (battery), the court concluded that the legislature's aim was to protect each citizen from the defined criminal conduct.
In the instant case, Reed was aware that both undercover officers sought to purchase marijuana from him. He invited them into his apartment to accommodate their wishes. He retrieved the marijuana for them and accepted $25 in return from each officer/purchaser. There is sufficient evidence of his intent to distribute marijuana to each buyer.
Considering the foregoing jurisprudence and the facts established at trial, and assuming arguendo the procedural propriety of defendant's complaint here, we determine that the evidence is sufficient to show that there were two separate "victims." Under these circumstances, there was sufficient evidence for the factfinder to have determined that there were two separate transactions on July 22nd in the defendant's residence, although perhaps part of a common scheme.
Reed also argues that Count 2 of the bill of information was duplicitous. A similar contention under similar circumstances was resolved adversely to the defendant in State v. Simpson, supra, as follows:
Duplicity in an indictment does not apply to the joinder in one indictment of several counts for different offenses. Slovenko, The Accusation In Louisiana Criminal Law, 32 Tul.L.Rev. 47, 71 (1957). Duplicity is the charging of more than one distinct crime in one count of an indictment. Id. In this case, the prosecution did not charge more than one distinct crime in any of the counts of the indictment.
It is clear from the bill of information that only one offense was alleged in each count. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2

IDENTITY OF CONFIDENTIAL INFORMANT
Defendant next argues that the trial court erred when it refused to order the state to disclose the identity of the confidential informant. Reed contends that the confidential informant was an essential participant in the transaction because he located the defendant, witnessed the alleged transaction and participated in the buy.
The record reveals that defense counsel orally moved the court to require the state to disclose the identity of the confidential informant after the state's opening statement and prior to the testimony of the state's first witness. Apparently, the preliminary examination was waived because the state permitted defense counsel to engage in a private conference with the undercover officers. It was defense counsel's understanding from his conversation with the officers that the confidential informant was not present at either transaction. The court denied defense counsel's motion.
In State v. Davis, 411 So.2d 434 (La. 1982), an undercover agent made four separate drug purchases from the defendant, all of which were conducted in the presence of an unidentified confidential informant. The confidential informant did not participate in any of the transactions. The Louisiana Supreme Court did not find reversible error in the trial court's failure to require the prosecution to disclose the identity of the confidential informant because the informant did not play a crucial role in the alleged criminal transaction.
In State v. Humphries, 463 So.2d 804 (La.App. 2d Cir.1985), the informant introduced an undercover agent to the defendant who later in the evening sold the agent one gram of cocaine outside of the presence of the informant. A second purchase was conducted in the absence of the informant five days later. This court found that the prosecution was not required to *138 disclose the identity of the confidential informant because the informant was not in a position to witness either purchase.
In the instant case, the evidence shows that the confidential informant did not play a material part in the purchase of marijuana from the defendant on either occasion. The confidential informant neither introduced defendant to the officers nor participated in the first transaction. He was simply a witness to the sale. The officers testified that the confidential informant did not know "Cliff." Tillman explained that the confidential informant was present solely for the purpose of explaining how they knew "Cliff" was selling marijuana.[*] The confidential informant was not present at all on the second occasion.
The foregoing circumstances and jurisprudence considered, we determine that the trial court was correct when it refused to order the state to disclose the identity of the confidential informant. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3

ADMISSIBILITY OF STATEMENT
In his third assignment of error, the defendant contends that the trial court erred in overruling his objection to the admissibility of an incriminating statement made by him at the time of his arrest. Defendant contends that the statement was erroneously admitted into evidence in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Officer Tillman testified that upon Reed's arrest he "... uttered under his breath that he was glad all this marijuana stuff was over." The statement was elicited by the prosecution, over defendant's objection, to bolster the witness's identification of the defendant.
The court finds this assignment of error to be without merit as Miranda is inapplicable. Statements or confessions not given in response to police questioning or any other compelling influence are admissible in evidence in the absence of Miranda warnings. State v. Smith, 407 So.2d 652 (La.1981); State v. Robinson, 384 So.2d 332 (La.1980).
Miranda v. Arizona, supra, specifically defines custodial interrogation as "questioning initiated by law enforcement officers" subsequent to the arrest or deprivation of the defendant's freedom of action. The evidence is clear that in the instant case the defendant was not responding to interrogation or police questioning. The simple fact that he may have been in custody is not determinative.

ASSIGNMENT OF ERROR NOS. 5 and 6

LEGALITY OF SENTENCE
In these assignments of error, defendant complains that the trial court erred in imposing consecutive sentences and that his sentences are excessive. Reed was sentenced to serve concurrent three year hard labor terms on Counts 1 and 2 and four years at hard labor on Count 3, consecutive to the other counts.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied, 439 So.2d 1074 (La. 1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. *139 State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. McGhee, 469 So.2d 1051 (La.App.2d Cir.1985).
Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. 1983), writ denied 435 So.2d 433 (La.1983). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, supra; State v. Hammonds, supra.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied 452 So.2d 695 (La. 1984).
A trial court is not required to render a suspended sentence or probation on a first felony offense. The judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La. App. 2d Cir.1984); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La.1983).
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment are concurrent unless expressly directed by the trial court. LSA-C. Cr.P. Art. 833. In the instant case, the trial court ordered concurrent sentences for Counts 1 and 2 involving two separate, but basically simultaneous distributions to different undercover officers. The court ordered that these sentences be served consecutively to that rendered on Count 3 involving a subsequent distribution to one of the same officers at the same location almost two weeks later.
The Louisiana Supreme Court has required a high degree of justification for consecutive sentences arising out of a single course of conduct. In State v. Sherer, 437 So.2d 276 (La.1983), the court stated:
"Because the function of the consecutive sentence should be similar to the sentence imposed on habitual or dangerous offenders, sentences for crimes arising from a single course of conduct should be concurrent rather than consecutive, absent a showing that the offender poses an unusual risk to the safety of the public."
LSA-C.Cr.P. Art. 883 was designed to help solve the difficult administrative question of when sentences were to be served concurrently and when consecutively. Official Revision Comment, LSA-C.Cr.P. Art. 883. Thus, the article requires that sentences arising out of the same transaction or common scheme are concurrent unless the sentencing court expressly directs otherwise.
Since this article predated the Louisiana Constitution of 1974, it also predated appellate sentence review in Louisiana. Thus Article 883, designed to remedy an administrative problem, became an important factor in appellate review for constitutional excessiveness when considering two or more sentences rendered simultaneously. It became necessary for appellate courts to determine whether the offenses in question were part of a common scheme or single act in order to decide whether the stringent Sherer showing by the trial court was required.
However, there is limited jurisprudence in this regard in this circuit. This court *140 has held that burglary of a vehicle and an unrelated residence within a three week period does not amount to conduct arising out of the same act or a common scheme. State v. Wiley, 459 So.2d 129 (La.App. 2d Cir.1984). On the other hand, we did not discuss the issue in that context in State v. Racine, 480 So.2d 945 (La.App. 2d Cir. 1985). There, the defendant had been charged with three separate counts of incest with his eldest daughter over a period of approximately six months. The record reflected that the defendant had been involved in such activities with his two eldest daughters over an extended period of time. Because the sentences were extensively articulated and the offenses were particularly repugnant, a resolution of the question of whether a common scheme was involved was not undertaken. In State v. Ashley, 463 So.2d 794 (La.App. 2d Cir.1985), it is apparent that the two counts of attempted first degree murder and the one count of armed robbery arose out of the same act. Thus, a specific resolution of this issue was likewise unnecessary there. Also, see and compare State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985), where certain forgeries were held to be part of a common scheme but were said to be sufficiently separate and distinct to justify consecutive sentences.
It is clear in the instant appeal that while both transactions on July 22, 1983 were part of the same act, the subsequent distribution on August 4, 1983 was not a part of the act of July 22nd. The difficult question is whether the act of August 4th was part of a common scheme or plan.
We determine that these two distinct distributions of controlled dangerous substances separated by two weeks in time, paid for separately, even though involving the same substance, the same undercover officer and the same location, are not part of a common scheme or plan. The circumstances here presented, particularly considering that the purchasers were virtual strangers, are indications that the defendant was in the business of selling drugs. Thus, our review shifts from whether the trial judge showed that the offender posed an unusual risk to public safety as required by State v. Sherer, supra, to the simplier standard of whether the record sufficiently justifies the sentencing choice.
In the instant case, the trial court determined that the defendant's sporadic work record, when coupled with his obvious willingness to sell dangerous substances to virtual strangers over a period of approximately two weeks, indicated that the defendant was in the business of selling dangerous substances and was likely to repeat the offensive conduct if given a suspended sentence. The court determined that the only mitigating circumstance was defendant's lack of a record for serious offenses.
In determining the term of imprisonment, the court concluded that there was neither provocation nor justification for the offenses. The court also alluded to Reed's prior arrests for misdemeanor offenses. The court concluded that no undue hardship would result from the defendant's incarceration since he provided very little support for his children and that his employment history was sporadic.
The trial court's assessment is supported by the record. We therefore conclude that the sentences imposed are not grossly out of proportion to the severity of the offenses and that the sentences imposed are not excessive. The defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[*] The confidential informant was acquainted with the female who informed the officers that a black male named "Cliff" was selling marijuana at the Plantation View Apartments.