551 So.2d 1381 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
George HUNTER, III, Defendant-Appellant.
No. CR 89-78.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
*1382 Robert L. Clark, Vidalia, for defendant-appellant.
Ronnie McMillin, Asst. Dist. Atty., Vidalia, for plaintiff-appellee.
Before STOKER, DOUCET and LABORDE, JJ.
DOUCET, Judge.
On November 1, 1984, Mrs. Nita Scott was robbed while attempting to deposit the day's receipts from the Family Dollar Store in Ferriday, Louisiana. Mrs. Scott was manager of the store. After the store closed that night, she and one of the cashiers, Ms. Trudy Arrington, made an accounting of the day's receipts. Afterwards, Mrs. Scott went to deposit the day's receipts of around $1,500.00 at the Concordia Bank in Ferriday. Ms. Arrington followed Mrs. Scott to the bank pursuant to the store's policy. They left the store in separate vehicles at approximately 8:30 p.m. in heavy rain.
When they reached the bank, Mrs. Scott drove up to the night deposit box while Ms. Arrington parked on the street next to the bank. Mrs. Scott got out of her car with the money bag but could not get the deposit *1383 box unlocked. She then heard a voice and looked up. She saw a man standing on the corner across the street and a man running towards her. Both were wearing ski masks, but she could tell that they were black. Sebastian Tyler later admitted that he and the defendant, George Hunter, III, were the two men seen by Mrs. Scott. Mr. Tyler stated that they were both armed with pistols on the night of the robbery. Mr. Tyler was the man who ran across the street. When Mr. Tyler ran across the street to get the money bag, he put his .22 pistol in his back pocket. The defendant shouted at Mrs. Scott to drop the money bag while he held his gun on her. Mrs. Scott threw down the money bag at the feet of Mr. Tyler. Mr. Tyler picked up the bag. He and the defendant then escaped down the street. Mr. Tyler testified that they got around $400 from this robbery.
Mr. Tyler further testified that within a couple of weeks, he, the defendant, and Thomas Keyes, got together and planned to rob the Piggly Wiggly store in Ferriday. After checking out the store two or three times, they decided to rob the store on November 12, 1984. At the end of the business day, Bill Campbell, the owner and manager of the store, began to read out the registers and get an accounting of the daily sales. He testified that the store grossed around $7,000 to $8,000 in cash, checks, and food stamps that night. He bundled up the money and placed it into two money bags to deposit in the bank. Bill placed the money bags in a paper bag below some groceries his wife had purchased. Bill and his wife closed the store some time between 7:00 and 7:30 p.m. and walked across the street to a warehouse where their cars were parked. There was no lighting at the warehouse and it was very dark.
Mrs. Campbell got in her car and started the engine. As Mr. Campbell was about to place the grocery bags in his car, two persons with hosiery pulled over their faces, jumped out from behind the building. Mr. Tyler identified these two individuals as being the defendant and himself. Mr. Keyes came up behind Mr. Campbell. Mr. Tyler approached Mr. Campbell with a gun and told him to drop the money bags. At first, Mr. Campbell denied that he had any money bags. However, after Mr. Tyler told him to drop the money bags again, Mr. Campbell dropped the grocery bag with the money bags in it and walked away. The defendant scrambled and fell while trying to run away. When the defendant fell, the bag tore open and everything fell out. The defendant hurriedly picked up the money bags while Mr. Tyler pointed the gun at the Campbells. Both the defendant and Tyler then ran away.
The defendant, George Hunter, III, was charged by bill of information with two counts of armed robbery, a violation of LSA-R.S. 14:64. On March 23, 1988, a jury of twelve found the defendant guilty as charged on both counts. The defendant was, thereafter, found to be a second offender under the habitual offender statute, LSA-R.S. 15:529.1, and sentenced to consecutive sentences of 33 years at hard labor without benefit of parole, probation or suspension of sentence on each count. The defendant is appealing his conviction and sentence based upon eight assignments of error, only four of which have been argued. Those assignments not briefed or argued are considered abandoned.
In his remaining assignments of error, the defendant argues that the trials on the two armed robbery charges should have been severed; that a mistrial should have been declared as a result of jury exposure to prejudicial newspaper publicity; and that evidence of a prior guilty plea and prior sentencing record was erroneously admitted into the record at his habitual offender hearing.
SEVERANCE
The defendant alleges that the trial court erred when it denied the defendant's motion for severance of the two armed robbery charges.
La. C.Cr.P. Art. 493 states that:
"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the *1384 same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
In the instant case, the defendant was charged in the same bill of information with two counts of armed robbery, which are of the same or similar character and are triable by the same mode of trial.
When an accused is charged in the same indictment with two or more offenses pursuant to art. 493, he may apply for severance of the offenses under La. C.Cr.P. art. 495.1, which provides:
"If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."
In determining whether prejudice may result from joinder, the trial court should:
"... weigh the possibility of prejudice versus the important considerations of judicial economy and administration. In determining whether prejudice may result from the joinder, the court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile." (Citations omitted.)
State v. Washington, 386 So.2d 1368, 1371 (La.1980); State v. Simpson, 464 So.2d 1104 (La.App. 3rd Cir.1985). A motion for severance is addressed to the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984).
In the present case, the defendant was charged with two counts of the same offense. The evidence as to each offense is simple and distinct and there has been no showing that the jury was unable to segregate the charges as to each offense. Although the defendant complains that the State called several witnesses over and over, this was done pursuant to the trial judge's directions in order that the evidence as to each offense be heard separately and in an orderly presentation. This orderly presentation enabled the jury to more easily differentiate between the two crimes. Finally, the nature of the crimes was not as such would make a jury hostile to the defendant by their joining. As a result, there was no abuse of discretion in the trial court denying the defendant's motion for severance.
MISTRIAL
The defendant next argues that the trial court in denying defendant's motion for a mistrial because five of the twelve jurors read in whole or in part a newspaper article on the defendant's trial. The article appeared in the paper the morning after the day the jury had been impaneled and the trial was to begin. The article stated that the defendant was a convicted felon and that he had escaped from the Concordia Parish Jail prior to the trial on the present charges. Since the defendant did not testify at trial and this information would have been inadmissible otherwise, the defendant claims this highly prejudicial information denied him his right to a fair trial by an impartial jury.
After the jury was impanelled on March 21, 1988, the trial judge released them until the next morning. The trial judge, however, failed to instruct them not to read, listen to or watch any news account with regard to the trial or the defendant. The next morning on March 22, 1988, the Concordia Sentinel published a news story concerning the defendant's trial. The article discussed the present charges against the defendant and the two armed robberies. The article also stated that the defendant had escaped from the parish jail before his trial and was a convicted felon. *1385 Prior to opening statements, the trial judge asked the jurors if they had read the article. Five of the twelve jurors admitted that they had seen the article. Three of these five jurors admitted to reading the entire article. However, two of these three did not remember that the defendant was a convicted felon. The remaining two jurors admitted to reading only part of the article. One juror stated she only read the article as far as where it stated jury selection had begun. The other juror stated she read the part concerning the robberies. All of the jurors stated that nothing in the article inflamed or influenced them against the defendant. They all stated they could still be fair and impartial jury members. Nonetheless, the defendant made a motion for mistrial. The trial judge denied the motion. The trial judge admonished these five jurors that what had been discussed in the article, his chambers, and open court, was not evidence. Therefore, they were not to discuss it among themselves or during deliberations.
La. C.Cr.P. art. 775 provides in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by article 770 or 771."
La. C.Cr.P. art. 771 provides for an admonition to the jury by the court to disregard an immaterial or irrelevant prejudicial remark made in argument or during trial within the hearing of the jury. The trial judge may grant a mistrial if he believes an admonition is not sufficient to insure a fair trial.
A mistrial is not warranted absent a determination that the jurors were actually exposed to the publicity in question and were so impressed by it as to be incapable of rendering a fair and impartial verdict. State v. Russell, 416 So.2d 1283 (La.1982); State v. Roman, 473 So.2d 897 (La.App. 3rd Cir.1985). The determination as to whether a mistrial should be granted under art. 775 is within the sound discretion of the trial judge, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. State v. Smith, 433 So.2d 688 (La. 1983).
In this case, both the trial judge and the attorneys individually questioned each juror who had seen the article. Each stated that he or she was not so impressed by the article as to be incapable of rendering a fair and impartial verdict. Additionally, this court has reviewed the article which was admitted into evidence on defendant's motion for mistrial. We do not find the article to be too prejudicial to be overcome by a mere admonition by the trial judge. As a result, the trial judge did not abuse his discretion in refusing to grant the mistrial.
HABITUAL OFFENDER EVIDENCE
Finally, the defendant maintains that the trial court erred in admitting into evidence at the habitual offender hearing the defendant's prior guilty plea and prior sentencing minutes in that these records were not introduced by a person authorized by LSA-R.S. 15:529.1(F) to do so.
The state filed a habitual offender bill against the defendant charging that he had been previously convicted on three counts of simple burglary on August 29, 1983 in Vidalia, Louisiana. During the habitual offender hearing on September 7, 1988, John Johnson, the District Attorney of the Seventh Judicial District, testified that he was the prosecutor for the state in that case. Mr. Johnson testified that the defendant was, in fact, the person who had previously plead guilty to three counts of simple burglary. The state introduced a certified copy of the minutes of the defendant's conviction on August 29, 1983, from the office of the Concordia Parish Clerk of Court. Mr. Johnson identified the minutes of the conviction and it was admitted into evidence over the objection of the defendant.
Mr. Johnson was also present when the defendant was sentenced for the simple burglary conviction. The state introduced a certified copy of the minutes of the defendant's *1386 sentencing hearing on January 11, 1984, in which the defendant was sentenced to a suspended sentence of concurrent five year sentences on each count. Mr. Johnson also identified these minutes. These minutes were admitted into evidence over another objection by the defendant.
LSA-R.S. 15:529.1 permits the establishment of prima facie proof of prior felony convictions by compliance with Subsection F of that statute. LSA-R.S. 15:529.1(F) states:
"The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, or of any chief officer of any parish or county jail in this state or any other state of the United States, or of the clerk of court of the place of conviction in the State of Louisiana, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the fingerprints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate."
The statute, contrary to defendant's argument, does not designate any proper person to introduce these records. The records on file with the Clerk of Court, which are otherwise admissible in a judicial proceeding, may be introduced into evidence in the form of originals or certified copies and it is unnecessary for the Clerk or Deputy Clerk of Court to personally appear and testify as to the authenticity of such records. LSA-R.S. 15:459; State v. Rowell, 306 So.2d 668 (La.1975); State v. Melton, 456 So.2d 192 (La.App. 4th Cir.1984). The statute merely requires that these records be authentic and certified by the proper officer in order to be considered prima facie proof of a defendant's prior felony convictions. See State v. Horton, 487 So.2d 602 (La.App. 4th Cir.1986). The minutes of the defendant's prior conviction and sentencing in this case were properly authenticated and certified by the Clerk of Court of the parish in which the conviction was obtained. Thus, the trial court did not err in admitting this evidence.
For the foregoing reasons, the defendant's conviction is affirmed.
AFFIRMED.